UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBRA MORWAY,

    Plaintiff,

Case No. 11-cv-13529
Honorable Gershwin A. Drain

v.

MSD CONSUMER CARE, INC., *et al.*,

    Defendants.

_____/

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [#32]
AND FINDING DEFENDANTS' MOTION TO COMPEL [#48] MOOT**

**I.    INTRODUCTION**

Plaintiff, Debra Morway, filed the instant action in the Oakland County Circuit Court, Pontiac, Michigan on June 30, 2011. Plaintiff's Complaint alleges two products liability counts under theories of failure to warn and breach of warranty against Defendants, Brown Shoe Company, Inc., Wal-Mart Stores, and MSD Consumer Care, Inc. (collectively "Defendants").[1] Plaintiff claims that she suffered a severe allergic reaction after wearing a pair of shoes, purportedly containing paraphenylendiamine ("PPDA"), that were manufactured and/or distributed by the Defendants.

Presently before the Court is Defendants' Motion for Summary Judgment, filed on June 18,

---

[1] Plaintiff's Complaint also named Dr. Scholl's Foot Comfort Shops as a defendant, however on February 21, 2012, the parties entered a Stipulated Order to Modify Caption Complaint to Identify Correct Party Defendant. *See* Dkt. No. 7. Thus, Dr. Scholl's Foot Comfort Shops, Inc. is not a party to this action.

-1-

2013. A hearing was held on August 7, 2013. For the reasons that follow, the Court denies Defendants' Motion for Summary Judgment.

## II. FACTUAL BACKGROUND

In 1991, Plaintiff purchased a pair of Nike shoes. Within days of wearing the shoes, she began to experience burning, itching, redness, and blisters. Plaintiff was treated at a hospital and received follow-up care from a podiatrist. In 1995, a patch test was performed on Plaintiff and gave a positive reaction for PPDA. PPDA is classically in hair dye, black rubber, dyes for leather, especially black dye. In 1998, Plaintiff was hospitalized as a result of wearing a pair of FILA shoes. Plaintiff was hospitalized again in 2000 for a similar reaction to a different pair of shoes. When Plaintiff suffers an allergic reaction from shoes, she gets a rash and severe pain for months. Over the years, her reactions have gotten progressively worse.

In 2004, Plaintiff began treating with Drs. Peter Aaronson and Dr. George Murakawa at Wayne State University. Both doctors are dermatologists. Dr. Aaronson testified that hypersensitivity to PPDA is developed by exposure. The first exposure does not result in an allergic reaction, rather it develops in subsequent exposures.

In 2007, Plaintiff's allergy to PPDA was confirmed by Dr. Cohen, a leading dermatology expert on the causes of contact dermatitis. Plaintiff's doctors informed her that PPDA is often found in shoes, therefore Plaintiff began looking for warning labels on shoes and shoe boxes. However, Plaintiff never found any labeling of this nature, forcing her to buy and wear shoes to determine if she would have an allergic reaction.

In June of 2008, Plaintiff purchased a pair of Dr. Scholl's shoes at Defendant's Wal-Mart store in Rochester Hills, Michigan. Plaintiff had previously owned a pair of Dr. Scholl's shoes and

had never experienced any problems with the shoes. Plaintiff wore the Dr. Scholl's shoes for several weeks without incident. Roughly two and a half weeks after she purchased the shoes, blisters developed on her feet causing her extreme pain. Plaintiff began treating with Dr. Naman on July 4, 2008. Since this incident, Plaintiff claims she has suffered constant pain in her feet. Her doctors have diagnosed her as suffering from neuropathy in both feet.

Dr. Fowler tested Plaintiff on August 4, 2008 to determine whether she suffered from hypersensitivity to PPDA and whether her hypersensitivity was due to exposure to PPDA in the Dr. Scholl's shoes she wore in the July of 2008. Dr. Fowler opined that "[b]asically I think that we are dealing primarily with an allergic contact dermatitis to dyes and/or rubber, probably both." *See* Resp., Ex. F.

### III.   LAW & ANALYSIS

#### A.   Standard of Review

Federal Rule of Civil Procedure 56(a) empowers the court to render summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-

sided that one party must prevail as a matter of law.'" *Amway Distribs. Benefits Ass'n v. Northfield Ins. Co.,* 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (citing *Anderson*, 477 U.S. at 252).

### B.   Defendants' Motion for Summary Judgment

Defendants first argue that Plaintiff's failure to warn claim is preempted by the Federal Hazardous Substances Act ("FHSA"), 15 U.S.C. § 1261 *et seq*. The FHSA "was enacted in 1960 to 'provide nationally uniform requirements for adequate cautionary labeling of packages of hazardous substances which are sold in interstate commerce and are intended or suitable for

household use.'" *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 109 (2d Cir. 2001)

In 1966, a limited preemption provision was enacted, which states:

> [I]f a hazardous substance or its packaging is subject to a cautionary labeling requirement under section 2(p) or 3(b) [15 U.S.C. §§1261(p), 1262(b)] designed to protect against a risk of illness or injury associated with the substance, no State or political subdivision of a State may establish or continue in effect a cautionary labeling requirement[.]

15 U.S.C. § 1261 Note (b)(1)(A). In *Milanese*, the Court concluded that "to the extent that [the plaintiff]'s claims for breach of express warranty, strict products liability, and negligence seek to impose additional or more elaborate labeling requirements[,]" such claims were properly dismissed on FHSA preemption grounds. *Id.* at 109-10. However, the *Milanese* court also found that "a state cause of action alleging non-compliance with the FHSA would not be preempted by the Act." *Id.* ("Although there is no federal private right of action under the FHSA, . . . a state negligence claim lies for failure to comply with the federal, FHSA-mandated labeling requirements."); *see also Moss v. Parks Corp.*, 985 F.2d 736, 740-41 (4th Cir. 1993) ("[A] common law tort action based upon a failure to warn may only be brought for noncompliance with existing federal labeling requirements.").

Thus, Defendants' first argument is unavailing because Plaintiff's claim does not seek to require different or additional labeling than that required by the FHSA. Rather, Plaintiff's failure to warn claim stems from Defendants purported failure to comply with the FHSA's labeling requirements.

The FHSA requires all hazardous substances "intended, or packages in a form suitable for use in the household" to bear a label containing specific information and warnings. *See* 15 U.S.C. §1261(p)(1). A hazardous substance that does not contain the requisite labeling, is deemed a

"misbranded hazardous substance" and the introduction of such a substance into interstate commerce is prohibited. *Id*. Under the FHSA, hazardous substance is defined as "[a]ny substance or mixture of substances which . . . (iv) is a strong sensitizer . . . if such substance or mixture of substances may cause substantial personal injury or substantial illness during or as a proximate result of any customary or reasonably foreseeable handling or use . . . ." 15 U.S.C. § 1261(f)(1)(A). The Commission has determined that five substances meet the definition of "strong sensitizer," including, "[p]araphenylenediamine and products containing it." 16 C.F.R. § 1500.13(a). The FHSA requires that "[b]efore designating any substance as a strong sensitizer, the Commission, upon consideration of the frequency of occurrence and severity of the reaction, shall find that the substance has a significant potential for causing hypersensitivity." 15 U.S.C. § 1261(k).

Defendants argue that Plaintiff's failure to warn claim also fails because the regulations do not require a warning label for all products containing PPDA, rather only those products that contain PPDA and affect a significant portion of the population are required to have labeling in compliance with §1261. In support of this argument, Defendants provide the Court with a Staff Briefing Package containing a proposed update to the strong sensitizer supplemental definition and a strong sensitizer guidance document. *See* Defs.' Mot., Ex. D. This evidence does not control here as it concerns revising the supplemental definition of strong sensitizer that "would define more clearly the criteria that should be considered in determining whether a substance and/or product is a strong sensitizer." *Id.* at 13. Here, the Commission has already determined that PPDA is a strong sensitizer, thus all of the evidence submitted by Defendants concerning how to determine if a substance is a strong sensitizer is irrelevant.

However, the Court finds merit in Defendants' argument that the regulations do not impose

automatic labeling requirements whenever a product contains even the slightest amount of PPDA. Plaintiff argues that all products containing PPDA require warning labels. Plaintiff ignores the plain language of the FHSA which defines hazardous substances as any substance which is "a strong sensitizer" and "may cause substantial personal injury or substantial illness during or as a proximate result of any customary or reasonably foreseeable handling or use . . . ." 15 U.S.C. § 1261(f)(1)(A). The Commission's summary report of FHSA labeling requirements states:

> To require labeling, a product must first be . . . a strong sensitizer . . . [s]econd, the product must have the potential to cause substantial personal injury or substantial illness during or as a result of any customary or reasonably foreseeable handling or use[.]

*See* Defs.' Ex. G at 2-3. Thus, contrary to Plaintiff's argument, any presence of PPDA in a product does not automatically trigger the FHSA's labeling requirements. Therefore, the Court finds that a question of fact exists as to whether Defendants were required to label the subject shoes.

Further, the Court concludes that a question of fact exists as to whether the Defendants' shoes contained PPDA. While Defendants dispute that Plaintiff's evidence establishes the presence of PPDA, the Court cannot determine as a matter of law, based on the record before it, that there is no issue of fact as to the presence of PPDA. Plaintiff has a history of hypersensitivity to PPDA, and both Drs. Fowler and Aaronson performed testing and opined that Plaintiff had an allergic reaction to PPDA contained in her shoes. Thus, Defendants are not entitled to summary judgment on Count I.

Thus, because the Court finds a question of fact exists as to whether Defendants were required to label their shoes pursuant to the FHSA, the Court likewise finds that a question of fact exists as to Plaintiff's breach of implied warranty claim. To establish a prima facie case of breach of implied warranty, a plaintiff must show that goods were defective when they left the possession

of the manufacturer or seller. *See Kupkowski v. Avis Ford, Inc.*, 395 Mich. 155, 165-66; 235 N.W.2d 324 (1975). Under Michigan law, unavoidably safe products must be properly marketed with adequate warnings of their danger; the adequacy of the warning is an issue of reasonableness. *May v. Park Davis & Co.*, 142 Mich. App. 404; 370 N.W.2d 371 (1985). Here, there is a question of fact as to whether the goods were defective when they left Defendants' possession and whether they required FHSA warning labels. Accordingly, Defendants are not entitled to summary judgment on Count II.

Lastly, at the hearing Defendants' counsel argued that should this Court deny their Motion for Summary Judgment, that the Court consider certifying this action for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) because it involves a controlling question of law as to which there is substantial ground for a difference of opinion. *See* 28 U.S.C. § 1292(b). The Court declines to certify this matter for an interlocutory appeal as it does not find that such an appeal will "materially advance the ultimate termination of the litigation." *Id.*

    **C.**    **Defendants' Motion to Compel**

Roughly one week prior to the scheduled hearing on Defendants' Motion for Summary Judgment, Defendants filed a Motion to Compel. Defendants seek an order compelling Plaintiff to produce the remaining portion of a 2000 Consumer Product Safety Commission Investigation Summary Report that Plaintiff mentioned during her deposition. Plaintiff apparently brought page one of the Summary Report to her deposition and promised to provide the rest of the report to Defendants. At the August 7, 2013 hearing, counsel for Plaintiff informed the Court that Plaintiff has tried to locate the missing pages from the report, but has not been successful. Accordingly, Plaintiff's counsel advised the Court that he would have Plaintiff prepare an affidavit stating that

she cannot locate the remaining portion of the report, thus she has produced all responsive documents to Defendants' discovery requests. Accordingly, the Court finds that Defendants' Motion to Compel is MOOT. Plaintiff shall prepare an affidavit and send it to Defendants' counsel within seven (7) days from the date of this Order.

### IV. CONCLUSION

Accordingly, for the reasons stated above, Defendants' Motion for Summary Judgment [#32] is DENIED.

Defendants' Motion to Compel [#48] is MOOT. Plaintiff shall prepare an affidavit, consistent with this opinion, and send it to Defendants' counsel within (7) days from the date of this Order.

SO ORDERED.


Dated: August 14, 2013 /s/ Gershwin A Drain
GERSHWIN A. DRAIN
United States District Judge


CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
August 14, 2013, by electronic and/or ordinary mail.

/s/ Tanya Bankston
Deputy Clerk